UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HORACE WOODSON,

    Petitioner,

v.                                                 CASE NO. 6:10-cv-649-Orl-36KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the amended petition (Doc. No. 15), the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the amended petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 18). Petitioner filed a reply to the response (Doc. No. 23).

Petitioner alleges four claims for relief in his habeas petition: (1) the trial court erred when it ruled that a weighted leg restraint did not constitute shackling; (2) trial counsel was ineffective for failing to object to the use of the leg restraints during trial; (3) the State destroyed exculpatory DNA evidence in bad faith; and (4) trial counsel was ineffective for failing to investigate and prepare for trial. For the following reasons, the Court finds that

Petitioner is not entitled to relief on his claims.

## I.     *Procedural History*

Petitioner was charged in state court case number 03-32269-CFA with burglary of a dwelling (count one), grand theft (count two), and resisting an officer without violence (count three).[1]  The State filed a notice of intent to seek a sentence as a prison releasee reoffender ("PRR") and/or habitual felony offender ("HFO").  After a jury trial, Petitioner was convicted as charged.  The trial court sentenced Petitioner to a twenty-five year term of imprisonment for count one as an HFO, with fifteen years of the term to be served as a PRR, to a ten-year term of imprisonment for count two as an HFO, and to time served for count three.  Petitioner appealed, and appellate counsel filed an *Anders*[2] brief and moved to withdraw from the case.  Petitioner filed a pro se initial brief in which he raised ten grounds for appeal.  The Fifth District Court of Appeal affirmed *per curiam*.

Petitioner filed a state petition for writ of habeas corpus alleging ineffective assistance of appellate counsel.  The Fifth District Court of Appeal denied the petition without discussion.  Petitioner subsequently filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure.  The trial court denied claims one, two, and four, and held an evidentiary hearing on claim three.  Prior to the hearing, Petitioner raised an additional ground for relief.  After conducting an evidentiary

---

[1] Petitioner was also charged in state court case numbers 03-33240-CFA and 03-33241-CFA with two counts of burglary of a dwelling and grand theft. However, those cases are not at issue here.

[2] *Anders v. California*, 386 U.S. 738 (1967).

hearing, the trial court denied Petitioner's remaining claims. Petitioner appealed the denial of claim three and the additional ground for relief. The appellate court affirmed *per curiam*.

Petitioner then filed a "Motion for Final Disposition of Motion for Reconsideration" with the trial court. The trial court found that it had resolved all of Petitioner's pending claims in the prior action and denied the motion. Petitioner appealed, and the Fifth District Court of Appeal granted the State's motion to dismiss and dismissed the appeal.

Petitioner also filed a Rule 3.853 motion requesting DNA testing. The trial court held an evidentiary hearing on the issue, at which it was discovered that the items Petitioner sought to be tested had been disposed of or destroyed. The trial court denied the Rule 3.853 motion. Petitioner filed a petition for belated appeal of the denial of the motion for DNA testing. The Fifth District Court granted the petition for belated appeal. The appellate court ultimately *per curiam* affirmed the lower court's denial of Petitioner's Rule 3.853 motion. The instant amended federal petition for writ of habeas corpus follows.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.

28 U.S.C. § 2254(d). *See Brown v. Patton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The "unreasonable application" inquiry "requires the state court decision to be more than

incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### B. Standard for Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] *Strickland*, 466 U.S. at 687-88; *see also Bobby Van Hook*, 130 S. Ct. 13, 16 (2009). A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (April 4, 2011) (quoting *Knowles v. Mirzayanze*, 129 S. Ct. 1411, 1420 (2009)(citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id.* A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). An ineffectiveness claim premised upon juror selection is evaluated by the court like any other *Strickland* claim. *Harvey v. Warden, Union Correctional Inst.*, 629 F.3d 1228, 1243 (11th Cir. 2011).

### III.   Analysis

#### A.   Claims One and Two

Petitioner claims the trial court erred when it ruled that a weighted leg restraint did not constitute shackling (Doc. No. 15 at 6). Petitioner asserts he was forced to go to trial

with a weighted leg restraint, which the jury observed, in violation of *Deck v. Missouri*, 544 U.S. 622 (2005) (Doc. No. 16 at 2-4). In his second claim Petitioner alleges that trial counsel was ineffective for failing to object to the use of the weighted leg restraint at trial (Doc. No. 15 at 8). Petitioner raised ground two in his Rule 3.850 motion for post-conviction relief (App. E at 102). The trial court held an evidentiary hearing on the claim, after which it denied relief. *Id.* at 1-70, 161. Petitioner appealed the denial of this claim, and also argued his trial court error claim in that appeal (App. F at 1-12). The Fifth District Court of Appeal affirmed *per curiam*. *Id.* at 43.

At the post-conviction evidentiary hearing, Petitioner testified that at trial he was made to wear a weighted "boot" on his left leg (App. E at 19). Petitioner testified that during trial he sat with his left leg on the outside of the defense table and his pant leg did not cover the boot while he was sitting. *Id.* at 21. Petitioner further stated he saw some of the jurors looking at his leg. *Id.* Petitioner asked defense counsel if the leg restraint could be removed, and defense counsel told Petitioner that there was nothing she could do. *Id.* On cross-examination, Petitioner stated that the reason his leg was on the outside of the defense table was because both chairs would not fit under the table; in other words, he and counsel could not both sit with their legs under the table. *Id.* at 28.

Senior Judge Jere E. Lober, the judge that presided over Petitioner's trial, testified if he had noticed that any member of the jury could observe Petitioner's leg restraint, he would have made note of it on the record. *Id.* at 33. Judge Lober did not recall Petitioner sitting with his left leg on the outside of the defense table with his leg restraint in plain

view. *Id.* at 34-35. Judge Lober stated that if Petitioner had sat that way, it likely would have only been visible by the juror seated at the end. *Id.* at 35. Judge Lober further noted, however, that if he had noticed Petitioner sitting in that fashion, he would have removed the jury and told Petitioner to keep his leg under the table. *Id.*

Former defense counsel Minerva Simpson ("Simpson") testified that while she remembered Petitioner wore a weighted ankle device, she could not recall whether the boot was visible on the outside of Petitioner's clothing. *Id.* Simpson also testified that she had no recollection of Petitioner complaining about the weighted device on his ankle and could not remember how Petitioner was seated during trial. *Id.* at 41. If Simpson had noticed that Petitioner was seated with his leg outside the defense table, she would have asked him to keep both legs under the table. *Id.* Simpson testified that there was no problem with space at the defense table, and Petitioner could have placed his leg on the inside of the table. *Id.* at 41-42.

On cross-examination, Simpson testified that at no point during trial did Petitioner ever tell her that a juror was looking at his ankle device. *Id.* at 43. Simpson also explained that prior to trial there was a concern about Petitioner's behavior that warranted him being shackled in some way during trial. *Id.* at 44. Petitioner exhibited angry behavior and aggression toward Simpson, and Simpson stated that if he hadn't been restrained in some manner she probably would have been frightened. *Id.* at 44-45.

In denying Petitioner's ineffective assistance of counsel claim, the trial court stated the following:

>     The Court finds that an ankle restraint (a device containing weighted material) secured around the ankle is not such a "shackle" or restraint as to convey to a juror that it [is] a device only worn by a person in custody. It does not provide the image to an observer that the caselaw [sic] seeks to prohibit and it was not shown to have had any effect on the jury's verdict. This ground for relief is denied.

(App. E at 161).

"The principle difficulty arising from shackling or handcuffing at trial is that it tends to negate the presumption of innocence by portraying the defendant as a bad or dangerous person." *Gates v. Zant*, 863 F.2d 1492, 1501 (11th Cir. 1989). The Supreme Court of the United States has described shackling as an "inherently prejudicial practice." *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986); *Deck v. Missouri*, 544 U.S. at 632 ("due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case."). If a jury cannot see a defendant's shackles, then there can be no prejudice to the defendant. *United States v. Mayes*, 158 F.3d 1215, 1226-27 (11th Cir. 1998); *Allen v. Montgomery*, 728 F.2d 1409, 1414 (11th Cir. 1984) ("[t]he well established rule in this circuit is that 'a brief and fortuitous encounter of the defendant in handcuffs is not prejudicial and requires an affirmative showing of prejudice by the defendant.'" ) (quoting *Wright v. Texas*, 533 F.2d 185, 187 (5th Cir. 1976)). However, if the claim relates to counsel's performance with respect to the issue of the use of shackles, the petitioner "still must show a reasonable probability that, absent his being shackled" the jury would not have found the petitioner guilty. *Marquard v. Sec'y for Dept. of Corr.*, 429 F.3d 1278, 1314 (11th Cir. 2005) (requiring a finding of prejudice in a capital case when

considering counsel's performance in relation to the petitioner being required to wear shackles during the penalty phase).

The trial court found that the weighted ankle device did not constitute shackling. This Court has not found, and the parties have not cited to, any authority from the Supreme Court of the United States in which the Court has held that a weighted ankle restraint constitutes shackling. Petitioner was not wearing leg irons, handcuffs, or chains, the use of which has been found to be prejudicial when there is no essential state interest furthered by their employment. *United States v. Durham*, 287 F.3d 1297, 1304-05 (11th Cir. 2002) (discussing how the use of leg shackles, handcuffs, gags, chains, or stun belts can impose burdens on the exercise of a defendant's rights and must be balanced with the trial court's determination that there was a need for security). As a result, Petitioner cannot demonstrate that the state court's denial of this claim was contrary to, or an unreasonable application, of clearly established federal law.

Additionally, Petitioner has failed to demonstrate that counsel's failure to object to the use of the ankle restraint resulted in prejudice. Petitioner cannot show that absent the use of the weighted ankle restraint, he would not have been convicted. Officer Lincoln Strom ("Strom") testified that he responded to a call at 1426 Tropic Street in Titusville, Florida where a burglary had occurred (App. B at 1426). Officer McCoy, who had also responded, advised him that there was a broken window near the back door of the residence and blood around the window. *Id.* at 134-35. Strom walked around the house, and through the window of a door observed a black male that he identified as Petitioner

10

walking down the stairs with a laundry bag over his shoulder. *Id.* at 136-38. When Strom yelled, "Show me your hands, drop the bag. Stop, or I'll shoot" and identified himself as an officer, Petitioner fled the home on foot. *Id.* at 139. McCoy also saw the man exit the house. *Id.* at 180.

Strom's canine, Dobie, tracked a scent to a home at 1604 Eden Court, approximately 500 yards away. *Id.* at 142, 165. The house on Eden Court also had a broken window and blood on the windowsill. *Id.* at 143. Dobie located a person hiding in the closet of one of the bedrooms. *Id.* 144-45. This man was identified as Petitioner. *Id.* at 145. Strom testified that Petitioner is the same person he saw in the victim's home. *Id.* at 176. There was overwhelming evidence of Petitioner's guilt presented at trial, and the jury would have convicted Petitioner even if they had not observed the ankle restraint. As such, the state court's determination of these claims was neither contrary to, or an unreasonable application of, federal law. Accordingly, claims one and two are denied pursuant to § 2254(d).

   B.   *Claim Three*

In his third claim, Petitioner alleges that the State destroyed exculpatory evidence in violation of his Fourteenth Amendment rights (Doc. No. 1 at 11). On October 25, 2007, Petitioner filed a motion for post-conviction DNA testing pursuant to Rule 3.853 of the Florida Rules of Criminal Procedure (App. H at 130). Petitioner requested that the blood evidence be tested for DNA. *Id.* at 131. The State responded, indicating that the Titusville Police Department no longer had any evidence in this case that could be tested for DNA.

*Id.* at 149. Petitioner maintains that the State destroyed the evidence in bad faith because his original request for DNA testing occurred on November 21, 2005, and within two months of that request, the State destroyed the evidence (Doc. No. 16 at 10-12).

On July 21, 2008, the state court held an evidentiary hearing on the matter. *Id.* at 1. Denise Fitzgerald ("Fitzgerald"), crime scene technician for the City of Titusville Police Department, testified that she is in charge of the evidence room for the police department. *Id.* at 8. Fitzgerald stated that she collected evidence in this case on September 11, 2003. *Id.* at 8-9. The evidence was not used at trial. *Id.* at 9-11. Fitzgerald also told the trial court that the evidence was disposed of on July 19, 2006. *Id.* Fitzgerald explained that after a case becomes final in the state court, the police department will wait six months and then disposes of property that is no longer needed. *Id.* On cross-examination, Fitzgerald stated that she is now aware that a Florida law prohibits law enforcement agencies from destroying evidence until after a sentence expires. *Id.* at 14. However, Fitzgerald believed that the law was enacted after the evidence was destroyed in this case. *Id.* Fitzgerald then corrected her earlier statement and testified that the evidence was destroyed on January 19, 2006. *Id.* at 19.

The trial court also heard testimony of Strom, who testified, similar to his testimony at trial, to the same facts discussed *supra*. Specifically, Strom testified that Petitioner was the person whom he observed in the victim's home and in the house on 1604 Eaton Court. *Id.* at 35-40. The trial court denied Petitioner's Rule 3.853 motion. *Id.* at 167. The court found that even without the blood evidence, there was sufficient evidence at trial for a jury

to conclude beyond a reasonable doubt that Petitioner was the person that committed the burglary in this case. *Id.* The Fifth District Court of Appeal affirmed *per curiam* (App. J at 119).

In *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), the Supreme Court of the United States held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process." Potentially useful evidence is evidence which could have been subjected to tests, the results of which might have exonerated a criminal defendant. *Id.* at 57. The evidence in question was potentially useful because the blood evidence, if tested, might have exonerated Petitioner. However, Petitioner cannot demonstrate that the Titusville Police Department destroyed the physical evidence in bad faith. The blood evidence was destroyed on January 19, 2006, and Petitioner did not move to test the blood evidence until October 25, 2007, more than one year after the evidence was destroyed. As such, Petitioner cannot show that the State destroyed the evidence in response to his request for DNA testing.

Although Petitioner had attempted to raise a claim regarding counsel's failure to test the blood evidence prior to the destruction of the blood evidence, there is no indication that the destruction was in response to that claim (App. J at 95). Petitioner initially filed his Rule 3.850 motion on May 4, 2005, arguing that trial counsel was ineffective for failing to investigate the case prior to trial (App. E at 100). The trial court denied the claim as facially insufficient. *Id.* at 108. After counsel was appointed for the post-conviction evidentiary hearing on an unrelated claim, counsel moved for the trial court to reconsider

13

the facially insufficient claim, arguing that counsel was ineffective for failing to test the blood evidence (App. J at 95). The trial court denied the motion to reconsider on November 22, 2005. *Id.* Although Petitioner speculates that the State destroyed the evidence in January 2006 in response to his 3.850 claim, the record does not support this allegation. Fitzgerald testified that the destruction of the evidence was routine.

Petitioner has not shown that the state court's determination of this claim was contrary to, or resulted in an unreasonable application of *Youngblood*. Petitioner must show more than intentional destruction of potentially exculpatory evidence; Petitioner must demonstrate that the State was aware of the exculpatory value of the evidence and made a conscious effort to prevent the defense from securing the evidence. *See Guzman v. Sec'y, Dep't of Corr.*, 698 F. Supp. 2d 1317, 1337 (M.D. Fla. 2010) ("A determination of bad faith by the police 'must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.' A due process violation is not established when the evidence is only 'potentially useful' and the actions of the police could 'at worst be described as negligent.'") (quoting *Youngblood*, 488 U.S. at 58) (internal citation omitted). Other than Petitioner's self-serving assertion, he did not allege or proffer any evidence in the state court that demonstrated the police were on notice that the blood evidence was exculpatory but consciously destroyed the evidence to prevent him from pursuing testing of the evidence. *See Scarborough v. Crosby*, No. 8:02-cv-476-T-30TBM, 2005 WL 1051096, at *8 (M.D. Fla. Mar. 31, 2005) (finding petitioner's self-serving arguments that evidence was exculpatory without objective evidence that the State consciously destroyed the evidence

14

so that the defense could not perform testing was insufficient to establish bad faith under *Youngblood*).

Petitioner has not shown that the state court's denial of this claim was contrary to, or an unreasonable application of federal law, nor has he demonstrated that the decision was an unreasonable determination of the facts in light of the evidence presented. Accordingly, claim three is denied pursuant to § 2254(d).

### C.     *Claim Four*

Petitioner alleges that trial counsel was ineffective for failing to investigate and prepare for trial. Specifically, Petitioner contends that trial counsel was ineffective for failing to test the blood evidence in this case (Doc. No. 1 at 13). Petitioner maintains that had the blood found in the victim's home been tested, the results would have indicated that the blood was not his, and as a result, he would have been acquitted. *Id.* Petitioner raised this ground in his Rule 3.850 motion (App. E at 100). The trial court denied the instant claim as facially insufficient. *Id.* at 108. Petitioner moved for reconsideration, and the trial court denied the motion. *Id.* at 10. The Fifth District Court of Appeal affirmed *per curiam* (App. F at 43).

Respondents argue that this claim is procedurally defaulted. A *per curiam* affirmance of a trial court's finding of procedural default is a sufficiently clear and express statement of reliance on an independent and adequate state ground to bar consideration by the federal courts. *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990); *see also Ferguson v. Sec'y Dep't of Corr.,* 580 F.3d 1183, 1218 (11th Cir. 2009). "[T]he clear inference

15

to be drawn from the appellate court's per curiam affirmance of the trial court's decision explicitly based on procedural default is that the court accepted not only the judgment but the reasoning of the trial court." *Harmon*, 894 F.2d at 1273. Therefore, the claim is procedurally barred and cannot be considered unless Petitioner demonstrates cause and prejudice resulting from the default. *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999).

The Supreme Court of the United States recently held, in *Martinez v. Ryan*, 132 S. Ct. 1309, 1318-19 (2012), a prisoner may establish cause for an ineffective assistance counsel claim that was procedurally defaulted because it was not raised in an initial or first post-conviction motion if: (1) the state court did not appoint counsel in the initial-review collateral proceeding or (2) if counsel was appointed in the initial-review proceeding but failed to raise the claim). In the instant case, Petitioner raised this claim in a *pro se* Rule 3.850 motion. The trial court denied the claim as facially insufficient. After counsel was appointed, counsel moved to amend the Rule 3.850 motion to state a sufficient claim of ineffective assistance of counsel. Therefore, counsel did attempt to raise the instant claim in the initial-review collateral proceeding. Thus, Petitioner cannot demonstrate that ineffective assistance of post-conviction counsel is cause for his procedural default. Petitioner presumably could have raised a facially sufficient claim in a second Rule 3.850 motion which would not have been denied as successive because the claim was not previously decided on the merits. Fla. R. Crim. P. 3.850(f). Thus, Petitioner's claim is procedurally barred from review.

Additionally, even if Petitioner had established sufficient cause for the procedural

16

default, Petitioner cannot demonstrate that prejudice resulted from the default. Although defense counsel failed to test the blood evidence, there is not a reasonable probability that but for counsel's deficiency the result of trial would have been different because Petitioner was identified as the perpetrator in this case. *See Galloway v. State*, 802 So. 2d 1173, 1174-75 (Fla. 1st DCA 2001) (holding that even if DNA testing of the evidence demonstrated that the DNA found at the scene did not belong to the appellant, "[s]uch evidence would not demonstrate that appellant was not present at the scene of the crime and participating with his co-defendants in the commission of the crimes when they occurred."); *see also Overton v. State*, 976 So. 2d 536, 569-70 (Fla. 2007) (noting that the holding in *Galloway* was based on the fact that even if evidence obtained from the crime scene did not match the DNA of the defendant, such evidence would not prove that the defendant was not present at the crime scene or did not participate in the crime). Petitioner offers no explanation for the officer's identification of his face and the clothing he was wearing, or why he was found hiding in a closet after a canine tracked his scent to another home. Petitioner cannot show that his claim is substantial. Accordingly, claim four is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. *Certificate of Appealability*

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). "A

[COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus filed by Horace Woodson (Doc. No. 15) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 22nd day of October, 2012.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-3 10/22
Counsel of Record
Horace Woodson